UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| RICHARD STEIN, | **MEMORANDUM OF DECISION AND ORDER** |
| Plaintiff, | 04-CV-4741 (DRH)(ETB) |
| -v.- | |
| NEW YORK STAIR CUSHION COMPANY, INC., FREDERICK H. STUMPF, SANDRA STUMPF, NICOLE STUMPF, NSR CARPET COMPANY, INC., T.F.S. COMPANY, INC., WHOLESALE FLOORS, INC., WHOLESALE FLOORS TOO, LTD., STUMPF FAMILY LIMITED PARTNERSHIP and FREDERICK H. STUMPF AND SANDRA STUMPF FAMILY LIMITED PARTNERSHIP, | |
| Defendants. | |

_____

**Appearances:**

**For the Plaintiff:**
**Dollinger, Gonski & Grossman**
One Old Country Road, Suite 102
P.O. Box 9010
Carle Place, New York 11514-9010
By: Matthew Dollinger, Esq.

**For the Defendants:**
**Silverstein Perlstein & Acampora LLP**
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By: Robert J. Ansell, Esq.

**HURLEY, District Judge:**

Plaintiff Richard Stein ("Plaintiff") filed the instant action alleging that defendants New York Stair Cushion Company, Inc. ("New York Stair"), Frederick H. Stumpf ("Frederick"), Sandra Stumpf ("Sandra"), Nicole Stumpf ("Nicole"), NSR Carpet Company, Inc. ("NSR"), T.F.S. Company, Inc. ("TFS"), Wholesale Floors, Inc. ("Wholesale"), Wholesale

Floors Too, Ltd. ("Floors Too"), Stumpf Family Limited Partnership ("Stumpf LP"), and Frederick H. Stumpf and Sandra Stumpf Family Limited Partnership ("Stumpf LP2") (collectively, "Defendants") engaged in a civil RICO conspiracy involving fraudulent conveyances effectuated through the wires and mails to prevent Plaintiff from satisfying an outstanding state court judgment. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, Defendants' motion is granted and this case is dismissed in its entirety.

## BACKGROUND

Plaintiff is the owner of a judgment in the amount of $348,951.68, together with interest thereon to be computed at the rate of 9% per annum from December 21, 2000, against defendants New York Stair and Frederick. (Compl. ¶ 1.) Plaintiff alleges that he has been unable to enforce his judgment because both New York Stair and Frederick have fraudulently transferred all of their assets to the other defendants. (*Id.* ¶ 46.)

More specifically, Plaintiff alleges that sometime in 1994, he sold all of the shares of stock in New York Stair to Frederick. (*Id.* ¶ 9.) In exchange, Frederick executed a promissory note by which he agreed to pay Plaintiff a total of $554,730.20. (*Id.* ¶¶ 10-11.) Pursuant to the terms of the note, Frederick was to make monthly payments of $6,000.00 to Plaintiff, (*id.* ¶ 12), and in fact did so until about May 2000. (*Id.* ¶ 13.)

After Frederick's default, Plaintiff initiated an action in the New York State Supreme Court, Nassau County against Frederick and New York Stair, (*id.* ¶ 16), and obtained judgment against both defendants on December 21, 2000. (*Id.* ¶¶ 1, 19.) To date, no part of the judgment has been paid. (*Id.* ¶ 20.) In this action, Plaintiff claims that after Frederick purchased

the entire stock of New York Stair, he formed defendants NSR, TFS, and Wholesale, all having the same principal place of business as New York Stair. (*Id.* ¶ 21.) Similarly, on or about November 3, 2000, and within days of the Order by the Nassau County Supreme Court granting Plaintiff summary judgment in lieu of Complaint, Frederick allegedly formed Stumpf LP and Stumpf LP2, both having as their principal place of business Frederick's personal residence. (*Id.* ¶ 22.) Finally, on October 17, 2000, Frederick allegedly formed Floors Too, also having Frederick's personal residence as its principal place of business. (*Id.* 24.) Plaintiff claims that Frederick formed these six companies "with the unconditional and full knowledge, approval, consent and agreement of his wife, SANDRA and his daughter, NICOLE, [and] proceeded to use SANDRA and NICOLE as straw-persons and nominees to purportedly hold ownership of these entities in their names either jointly or separately or in the names of the numerous defendant business entities wh[en], in fact, FREDERICK is the true owner of" these companies. (*Id.* ¶ 25.) Subsequent to the formation of these companies, Frederick allegedly transferred his assets, including his shares of New York Stair, to these companies without consideration. (*Id.* ¶¶ 32, 36.) He further allegedly commingled assets, (*id.* ¶ 35), and used these companies' funds and assets to pay off his own personal expenses. (*Id.* ¶ 37.)

On or about August 5, 2002, Plaintiff filed a motion in the Nassau County Supreme Court requesting, inter alia, that a receiver be appointed to administer the assets of NSR, TFS, Wholesale, Floors Too, Stumpf LP, Stumpf LP2, Sandra and Nicole. (*Id.* ¶ 47.) The court denied Plaintiff's motion with leave to renew based upon Plaintiff's failure to establish that Frederick and/or New York Stair had any ownership interest in any of the subject entities. (*Id.* ¶ 49.) After further discovery proceedings, Plaintiff renewed his motion which was thereafter

3

granted in part. As a result, on March 12, 2004, the Nassau County Supreme Court appointed a receiver as to the assets of New York Stair, NSR, Stumpf LP, and Stumpf LP2. (*Id.* ¶ 52.) Plaintiff alleges that the appointed receiver has been unable to seize any assets in satisfaction of Plaintiff's judgment as the Defendants have fraudulently secreted all of the assets of the two judgment debtors. (*Id.* ¶ 53.)

Plaintiff asserts four causes of action against all Defendants, to wit, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO") and state law claims based upon fraudulent conveyances, conversion, and commercial bad faith. Defendants move to dismiss the Complaint in its entirety, arguing that Plaintiff has failed to adequately allege the elements of a RICO claim and that the Court should refrain from exercising jurisdiction over the remaining state-law claims. Plaintiff opposes the motion. Because the Court finds that Plaintiff has failed plead a RICO claim, and declines to exercise jurisdiction over Plaintiff's state-law claims, Defendants' motion is granted and the Complaint is dismissed in its entirety.

## DISCUSSION

### I. *Standard of Review*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

## II. Plaintiff's RICO Claim

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted). In this case, Plaintiff asserts claims pursuant to sections 1962(b), (c), and (d). Following the order of argument set forth in the parties' briefs, the Court begins with an analysis of subsection (c).

### A. *Section 1962(c)*

Section 1962(c) makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

18 U.S.C. § 1962(c). "To establish a violation of 18 U.S.C. § 1962(c) then, a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco*, 244 F.2d at 306 (citations and internal quotation marks omitted). Here, Defendants move to dismiss the Complaint on the grounds that Plaintiff fails to adequately allege: (1) the existence of an enterprise, (2) the predicate acts of mail or wire fraud, (3) the existence of a pattern of racketeering activity, and (4) that Defendants' alleged conduct was the proximate cause of

5

Plaintiff's injury. The Court will address each of Defendants' arguments in turn.

### 1.     *RICO Enterprise*

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also First Capital*, 385 F.3d at 174 ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") (citation and internal quotation marks omitted). The Second Circuit has further instructed that courts should look to the "hierarchy, organization, and activities" of an association-in-fact enterprise to determine whether its "members functioned as a unit." *Id.* (citations and internal quotation marks omitted). "In addition to individuals associated in fact, any legal entity may qualify as a RICO enterprise." *First Capital*, 385 F.3d at 173 (citing 18 U.S.C. §§ 1961(4), 1962(c)).

"The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." *Id.* at 73 (citing *Turkette*, 452 U.S. at 583); *see also DeFalco*, 244 F.3d at 307 ("Under section 1962(c), a defendant and the enterprise must be distinct."). This distinction between the elements of an enterprise and the elements of a pattern was recognized as fundamental by the Supreme Court in *Turkette*:

6

> In order to secure a conviction under RICO, the Government must prove both the existence of an enterprise and the connected pattern of racketeering activity. The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

452 U.S. at 583 (citation omitted).

In the instant case, Plaintiff alleges that Defendants constitute an association-in-fact enterprise, the purpose of which is "to accomplish the fraudulent transfer and continuing custodianship of FREDERICK's and [NEW YORK] STAIR's assets to shield those assets from the claims of Plaintiff." (Compl. ¶ 66; *see also* Pl.'s Mem. at 14.) Pursuant to *Turkette*, the fatal flaw in Plaintiff's allegations is that they fail to articulate an enterprise that exists as an association independent of the alleged pattern of racketeering activity. In this regard, Plaintiff does not allege that the association-in-fact enterprise has any purpose other than the execution of Frederick's scheme to conceal assets from Plaintiff.

In *First Capital,* the plaintiffs alleged an enterprise that existed for the purpose of concealing a defendant's assets from his creditors and the bankruptcy court. 385 F.3d at 174. The plaintiffs alleged predicate acts by the defendants that largely consisted of making false statements in connection with a bankruptcy proceeding and engaging in fraudulent transactions

with each other aimed at preventing creditors from reaching the defendant's assets. *Id.* at 165-66. The Second Circuit found that the plaintiffs had not sufficiently alleged the existence of a RICO enterprise, noting that the complaint failed "to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves--a requirement in this Circuit." *Id.* at 174. The court further noted that the plaintiffs "failed to provide us with any solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise from which we could fairly conclude that its 'members functioned together as a unit.'" *Id.* (internal quotation marks and citations omitted).

Similarly, in this case, Plaintiff alleges an enterprise whose purpose is to conceal assets from Plaintiff and the predicate acts involve alleged fraudulent conveyances aimed at accomplishing that goal. As in *First Capital*, Plaintiff fails to allege any fraudulent conduct by Defendants that is separate and distinct from the alleged act of racketeering – in essence, the enterprise alleged *is* the pattern of racketeering activity. Accordingly, because the Complaint fails to sufficiently allege the existence of an enterprise, Plaintiff's RICO claim fails.

  **2.** **Predicate Acts**

  **(a)** **Mail and Wire Fraud**

Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). The statute requires a plaintiff to plead at least two predicate acts of racketeering activity. *Id.* § 1961(5) "A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the

8

scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir. 1996) (citation omitted); *see also U.S. v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000) (wire fraud); *McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992) (mail fraud).

Here, Plaintiff alleges the predicate acts of mail and wire fraud. (*See* Compl. ¶¶ 63-64.)[1] Rule 9(b) states that in averments of fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). This provision applies to RICO claims for which fraud is the predicate illegal act. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999). Defendants challenge the sufficiency of the mail and wire fraud allegations on the ground that the Complaint fails to plead fraud with the required specificity. (Defs.' Mem. at 10.)

In *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993), the Second Circuit stated that "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Id.* at 1176. Contrary to Defendants' argument, however, *Mills* does not require that allegations of mail and wire fraud be pled with such specificity in all instances. Rather, in cases where the plaintiff claims that mail and wire fraud took place in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *See, e.g.*, *Breslin Realty Dev. Corp. v. Schackner*, 397 F. Supp. 2d 390, 398 (E.D.N.Y. 2005); *Jerome M. Sobel & Co. v. Fleck*, No. 03 Civ. 1041, 2003 WL 22839799,

---

[1] The Court notes that a fraudulent conveyance does not constitute an act of racketeering. *See* 18 U.S.C. § 1961(1); *see also Appollon Waterproofing & Restoration, Inc. v. Bergassi*, No. 01 Civ. 8388, 2003 WL 1397394, at * (S.D.N.Y. Mar. 20, 2003) (stating that enumerated crimes under RICO statute do not include fraudulent conveyance and conversion).

9

at *5 (S.D.N.Y. Dec. 1, 2003), *report and recommendation adopted*, 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004). Instead, Rule 9(b) is satisfied so long as the alleged mailings and wire transfers "further an underlying scheme that itself has a fraudulent, deceptive purpose." *Jerome M. Sobel*, 2003 WL 22839799, at *5 (citing *Schmuck v. United States*, 489 U.S. 705, 715 (1989). Thus, even "innocent" mailings or wire transfers may constitute predicate acts so long as they are part of the execution of the scheme. *Id.* (citation omitted).

Here, the Complaint details several alleged fraudulent transfers accomplished through the wires and provides dates, content of the transfer, and the identity of the transferor and transferee. (*See* Compl. ¶¶ 32-38.) To the extent other examples of mail and/or wire fraud lack such specificity, dismissal is not required. To the contrary, the overall scheme to defraud has been described in detail and the Complaint clearly explains the relationship between the mailings and/or wire communications and the scheme to defraud. For example, the Complaint alleges that Defendants used the United States Postal Service (filing fraudulent tax returns) as well as the interstate wires (transferring cash and assets between Defendants) to execute portions of their fraudulent scheme to prevent Plaintiff from enforcing his judgment. As noted above, under these circumstances, such allegations are sufficient. Accordingly, the Court finds that the Complaint satisfies Rule 9(b).

### (b) *Attributing Acts to Each Defendant*

Defendants argue that the Complaint should be dismissed because it fails to specify the identity of the persons who allegedly committed the predicate acts. The Court disagrees. Although a complaint sounding in fraud should inform each defendant of the nature of his alleged participation, "'it is not necessary to allege . . . that the defendants have personally

used the mails or wires; it is sufficient that a defendant "causes" the use of the mails or wires.'" *Breslin Realty*, 397 F. Supp.2d at 399 (quoting *Jerome M. Sobel*, 2003 WL 22839799, at *5). Thus, "it is not significant for purposes of the mail fraud statute that a third-party, rather than the defendant, wrote and sent the letter at issue, provid[ed] . . . the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act." *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989).

Here, the Complaint alleges that each of the Defendants are directly connected to the scheme to defraud such that each defendant could have reasonably foreseen that the mail or wires would be used in the ordinary course of business as a result of their acts. Accordingly, to the extent Defendants seek dismissal on this ground, their motion is denied.

### 3. *Pattern of Racketeering Activity*

Defendants assert that Plaintiff has failed to allege a "pattern of racketeering activity." RICO defines a "pattern of racketeering activity" as requiring "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco*, 244 F.3d at 321 (quoting *H.J. Inc.*, 492 U.S. at 239 (1989)). The continuity can be either "'close-ended continuity'" or "'open-ended continuity.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239).

Without specifying whether the Complaint alleges a close- or open-ended continuity, Plaintiff argues generally that the Complaint alleges a "<u>continuing</u> custodianship of Frederick's assets" by Defendants "who continue to disperse the secreted assets for Frederick's

11

benefit, but always out of plaintiff's reach." (Pl.'s Mem. at 16; *see also* Compl. ¶ 65.) Defendants counter that Plaintiff fails to allege a pattern because the predicate acts alleged "result from [Plaintiff's] meritless and impermissible fragmentation of a single predicate act into multiple acts for the mere purpose of pursuing his RICO claim." (Defs.' Mem. at 11.) Thus, Defendants argue, even accepting Plaintiff's claim that the goal of Defendants' alleged scheme was to avoid payment of Plaintiff's judgment, the alleged predicate acts were "in furtherance of a single episode of alleged fraud involving one victim and relating to one basic transaction." (*Id.*)

### *(a)     Close-Ended Continuity*

"A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time.'" *First Capital*, 385 F.3d at 181 (quoting *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). While this Circuit has not found acts spanning less than two years to be a close-ended pattern, acts that occurred over a longer period of time do not necessarily form a pattern. *Id.* ("[W]hile two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."). "Although continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" *Id.* (quoting *DeFalco*, 244 F.3d at 321).

Although multiple schemes are not required, *see Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("Congress did not mean 'to exclude from the reach of RICO multiple acts of racketeering simply because . . . they further but a single

scheme'") (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989) (en banc)), the Second Circuit has cautioned that "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Id.*; *see also GICC*, 67 F.3d at 467 ("That multiple schemes are not required in all circumstances does not mean that the number and nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant. Rather, a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic.")

In *Schlaifer Nance*, the plaintiff alleged that it was fraudulently induced into entering a licensing agreement with the defendant Estate of Andy Warhol by defendants' false representations that the Estate owned all the copyrights to all of Warhol's works of art, while in fact, many of Warhol's works had fallen into the public domain. *Id.* at 93. Plaintiff complained that the Estate committed a RICO violation by repeatedly defrauding plaintiff to maximize the value of the Estate. *Id.* at 96. The plaintiff alleged various acts that it claimed constituted a pattern of racketeering activity, including "fraudulently transferring [plaintiff's] rights under the Agreement to others," "accepting advance payments from sublicensees knowing [plaintiff] would not approve," "fabricating bases for the disapproval of the licensing of many products," "threatening to allege a known false claim of fraud against [plaintiff]," and "revising history through misrepresentation, deceit, and perjury, to cover up a pattern of racketeering activity." *Id.* at 96-97.

In finding that plaintiff had failed to allege close-ended continuity, the court noted that there was only "one purportedly fraudulent act: the negotiation of the Agreement. The acts complained of . . . are subparts of the singular act, and not a 'pattern' of separate acts with an

13

underlying purpose." *Id.* at 98.

Here, Plaintiff has alleged several predicate acts, all involving Defendants' transfers of cash or assets to companies formed for that purpose, in furtherance of Defendants' alleged scheme to avoid payment of Plaintiff's judgment, spanning over at least four years. As noted above, however, that fact alone is not sufficient.

In *First National*, the Second Circuit was faced with similar allegations and held that the lower court properly dismissed the pleading. In that case, plaintiffs alleged that defendants' RICO violations and state-law fraudulent conveyance violations prevented plaintiffs from satisfying outstanding judgments. 385 F.3d at 165. Plaintiffs alleged various predicate acts, primarily bankruptcy and mail frauds. *Id.* Finding that plaintiffs had properly pled several predicate acts extending over two and one-half years with regard to one of the defendants, the court nonetheless found:

> [W]e agree with the District Court that every factor other than duration cuts against a finding of closed-ended continuity in this case. At bottom, Plaintiffs have alleged that [defendant] engaged in a single scheme to defraud two creditors by quickly moving his assets to his relatives and then concealing the existence of those assets during his bankruptcy proceeding. But however egregious [defendant's] fraud on Plaintiffs may have been, they have failed to allege that he engaged in a pattern of racketeering activity. Accordingly, Count Five was properly dismissed as alleged against him.

*Id.*

Similarly, in this case, accepting all of Plaintiff's allegations as true, Plaintiff alleges a pattern involving a single scheme of narrow scope, including one victim[2] and a limited

---

[2] *See Jerome M. Sobel*, 2003 WL 22839799, at *12 ("[M]any cases finding no closed-ended continuity have pointed to the existence of only one . . . victim.") (collecting cases).

14

number of related participants.  As in *Schlaifer Nance*, there is "one purportedly fraudulent act": the transferring of Frederick's and New York Stair's assets.  Accordingly, the Court finds that the racketeering activity alleged here does not constitute the sort of "long-term criminal conduct" that Congress sought to target in RICO.  *See GICC Capital Corp.*, 67 F.3d at 469; *see also FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity.  This is the case even when the scheme's duration exceeds one year.") (collecting cases).

### *(b)      Open-Ended Continuity*

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *First Capital*, 385 F.3d at 180.  In this Circuit, the "cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." *GICC Capital Corp.*, 67 F.3d at 466 (collecting cases).

Here, Plaintiff argues that because the purpose of the alleged RICO scheme is to "hide and shield the custodianship of Frederick's assets and cash, it is both reasonable and realistic to conclude that the continuing custodianship of Frederick's assets poses a distinct threat of repetitive illegal use of the mails and 'wire' indefinitely into the future." (Pl.'s Mem. at 16.) Defendants do not address this contention.

The nature of the predicate acts alleged weighs in favor of a finding of open-

ended continuity as they suggest a threat of repetition continuing into the future. This is borne out by the receiver's alleged inability to seize any assets in satisfaction of Plaintiff's judgment. (Compl. ¶ 53.) However, insofar as dates are provided in the Complaint, which itself is dated October 1, 2004, the last predicate act is alleged to have occurred on January 22, 2001. (Compl. ¶ 32(d).) This cuts against a finding of a current or future threat. *See First Capital*, 385 F.2d at 181 ("[N]o predicate acts have occurred since December 1999 [amended complaint filed in September 2001], which suggests that the scheme has wound to a close.").

In sum, the Court finds that whether there is open-ended continuity is a close call. Nonetheless, even assuming Plaintiff sufficiently alleged a threat of future criminal conduct, as noted *supra*, the pleading still fails. Accordingly, the Court need not and does not resolve this issue.

### 4. *Proximate Cause*

A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). This injury must be proximately caused by the predicate acts of the RICO violation. *See, e.g.*, *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120 (2d Cir. 2003).

Here, Defendants assert that Plaintiff cannot meet this requirement because his injury arises solely out of the breach of contract claim that was adjudicated in state court and resulted in a judgment in Plaintiff's favor. (Defs.' Mem. at 12.) Defendants argue that the only injury alleged in this case is that Defendants' alleged conduct has obstructed Plaintiff's ability to collect upon this judgment. (*Id.*) Defendants cite no authority for this proposition. Because

Defendants have not cited any controlling authority for their application, and because Plaintiff has also failed to address this specific issue, the Court declines to grant Defendants' motion on this point.

### III. *Section 1962(b)*

Section 1962(b) provides as follows:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"Under any prong of § 1962 a plaintiff in a civil RICO suit must establish a pattern of racketeering activity." *GICC*, 67 F.3d at 465. Here, the Court has already determined that Plaintiff has failed to plead a pattern of racketeering activity. Accordingly, Plaintiff's claim under subsection (b) is dismissed.

### IV. *Section 1962(d)*

The Complaint asserts a claim for RICO conspiracy under 18 U.S.C. § 1962(d). That section provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A claim under section 1962(d) fails as a matter of law if the substantive claims based on the other subsections are defective. *See First Capital*, 385 F.3d at 182; *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). Accordingly, because Plaintiff fails to state a viable RICO claim, his conspiracy claim fails as well.

### V. **Plaintiff's Remaining Claims are Dismissed**

Having found that the allegations in the Complaint do not support federal

jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## VI. *Leave to Amend*

Plaintiff does not move for leave to amend. Instead, in his memorandum of law in opposition to the instant motion, Plaintiff cursorily states "should the Court deem the plaintiff's Complaint to be insufficiently particular in its pleading, plaintiff requests Court leave to amend the Complaint under F.R.C.P. [] 15(a) so as to correct any deficiency in pleading." (Pls.' Mem. at 6.) Assuming arguendo that Plaintiff's succinct statement could be deemed the equivalent of a motion to amend, it would nevertheless fail.

Rule 15(a) of the Federal Rules of Civil Procedure provides in pertinent part that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend should be denied, however, "if there is an 'apparent or declared reason -- such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In determining whether proposed claims are futile, the Court is required to adopt the same analysis as that applied on a motion to dismiss pursuant to Rule 12(b)(6). *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005). Here, Plaintiff has not provided the Court with, or suggested the existence of, any new facts which might support an

amendment.  *See Leung v. Law*, 387 F. Supp. 2d 105, 112-13 (E.D.N.Y. 2005) ("[T]he courts of this Circuit have frequently noted that alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.") (citation and internal quotation marks omitted). Accordingly, to the extent Plaintiff moves for leave to amend, that request is denied.  *See In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 404 (2d Cir. 2005) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss. . . .  Furthermore, where amendment would be futile, denial of leave to amend is proper.") (citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in its entirety.  The Clerk of the Court is directed to close this case.

**SO ORDERED**

Dated: Central Islip, NY
February 10, 2006

/s_____
Denis R. Hurley,
United States District Judge